**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| SYNOPTEK, LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>SYNAPTEK CORPORATION,<br><br>            Defendant. | Case No.: SACV 16-01838-CJC(JCGx)<br><br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

Plaintiff Synoptek, LLC, filed this action on October 4, 2016, against Defendant Synaptek Corporation for trademark infringement, false designation of origin, unfair competition, and trademark cancellation based on Synaptek's use of the '160 mark

"SYNAPTEK."  (Dkt. 1 [hereinafter "Compl."].)  Synaptek filed a counterclaim against Synoptek on March 20, 2017, for non-infringement of trademark.  (Dkt. 43.)  On March 5, 2018, the Court granted Synoptek's motion for partial summary judgment for cancellation of Synaptek's '160 trademark.  (Dkt. 66 ["March 5 Order"].)  On April 23, 2018, Synaptek filed a motion for summary judgment as to Synoptek's remaining claims, arguing that those claims are barred by laches or alternatively, that Synoptek has no evidence of damages to support its trademark infringement cause of action.[1]  (Dkt. 77 [hereinafter "Def.'s Mot."].)

On May 4, 2018, the parties filed a joint stipulation for relief from the Court's scheduling order for each to file motions to resolve trial-related matters, (Dkt. 83), and the Court granted their request on May 8, 2018, (Dkt. 86).  Pursuant to the Court's order, Synaptek filed an *ex parte* application to continue the pre-trial and trial dates, (Dkt. 84), and Synoptek filed a motion to strike Synaptek's jury demand and for partial summary judgment on Synaptek's liability for trademark infringement in light of the Court's March 5 Order, (Dkt. 85 [hereinafter "Pl.'s Mot."]).

For the following reasons, Synoptek's motion for partial summary judgment and to strike the jury demand is GRANTED, and Synaptek's motion for summary judgment is DENIED.

## II.  BACKGROUND

Synoptek is an IT services company that provides a host of computing services, such as IT operations, IT program management, application management, and cloud and

---

[1]  Synaptek's motion is styled as a motion for partial summary judgment, but as Synaptek seeks judgment as to all of Synoptek's remaining claims, the Court will treat it as a motion for summary judgment.

hosting services.  (Dkt. 59-3 ¶¶ 1–2, 10–14.)  Synoptek serves clients in commercial sectors such as finance, healthcare, and retail, as well as in state, local, and federal government.  (*Id*. ¶ 3.)  Synoptek markets its services through internet presence, advertising, press releases, word-of-mouth, and print advertising.  (*Id*. ¶ 16.)  Synoptek has made substantial expenditures for online marketing, and has been advertising its company and services since 2004.  (Dkt. 106 ¶¶ 9, 12.)  Synoptek owns U.S. Trademark Registration No. 3,424,720 ("Synoptek" or "the '720 mark"), which was registered as of May 6, 2008.  (Dkt. 59-3 ¶¶ 4–5, 7.)

Synaptek was incorporated in August 2008, (*id*. ¶ 58), and is also an IT services company that provides computing services that include systems integration, operations support, program management, application development, and cloud integration, amongst other services, (*id*. ¶¶ 18, 20–21, 25–27).  The co-founders of Synaptek were not aware of "Synoptek" at the time they chose their company name.  (*Id*. ¶ 63.)  Synaptek is a certified small disadvantaged business ("SBD") and provides IT services to the federal government.  (*Id*. ¶¶ 20–21.)  Synaptek has maintained a website since 2011, (*id*. ¶ 29; Dkt. 106 ¶¶ 10–11), and markets its services through advertising, press releases, word-of-mouth, and print advertising, (Dkt. 59-3 ¶ 29).  Synaptek bids on federal government small-business set-aside contracts.  (*Id*. ¶ 70.)  Synaptek uses the "Synaptek" mark in commerce in connection with the sale, offering for sale, distribution, or advertising of its services.  (Dkts. 85-2 at 1, 110-1 at 1.)  Synaptek's business has doubled in size each year from 2009 through 2015.  (Dkt. 106 ¶ 14.)

On October 10, 2013, Synaptek filed U.S. Trademark Application No. 80/088,536 ("the '536 application") with the U.S. Patent and Trademark Office ("PTO") seeking a federal registration for the designation "Synaptek."  (Dkt. 59-3 ¶ 30; Dkt. 52-3 [Declaration of Salil Bali, hereinafter "Bali Decl."] Ex. 7.)  The '536 application claimed a date of first use of August 4, 2008.  (Dkt. 59-3 ¶¶ 23, 30.)  On February 23, 2014, the

PTO denied the '536 application pursuant to 15 U.S.C. § 1052(d) based on a likelihood of confusion with the marks "Synoptek," "Synetek Solutions" (two marks), and "Synaptyk" (two marks). (*Id.* ¶ 31; Bali Decl. Ex. 8.)  The PTO found that "Synaptek" is the "phonetic equivalent" to all five marks, that the mark owners' services are "identical in part, and otherwise closely related," and noted the "only difference" between "Synaptek" and "Synoptek" was the use of "A" versus "O." (Dkt. 59-3 ¶ 32; Bali Decl. Ex. 8.) Synaptek filed a response to the PTO's February 23 denial arguing against the PTO's finding of a likelihood of confusion. (Dkt. 59-3 ¶ 33; Bali Decl. Ex. 9.)  On September 4, 2014, the PTO issued a final office action denying the '536 application based on a likelihood of confusion between "Synaptek" and the marks "Synoptek" and "Synaptyk" (two marks). (Dkt. 59-3 ¶ 34; Bali Decl. Ex. 10.)

The Synaptyk marks, U.S. Trademark Registration Nos. 4,015,160 ("the '160 mark") and 4,015,163, were registered to Synaptyk, Inc. (Dkt. 59-3 ¶ 37, 52-12.)  On March 3, 2015, Synaptek filed a Request for Suspension of the prosecution of the '536 application as well as a Petition for Cancellation of the Synaptyk marks. (*Id.* ¶ 38; Bali Decl. Ex. 13; Dkt. 54 [Declaration of Edward Schewe, hereinafter "Schewe Decl."] Ex. 36.)  In July 2015, Synaptek acquired ownership of the Synaptyk marks. (Dkt. 59-3 ¶ 39.)  Synaptek thereafter informed the PTO examiner in connection with the '536 application that it now owned the Synaptyk marks, and the '536 application was reinstated. (*Id.* ¶ 40.)  On July 15, 2015, Synaptek filed a Section 7 request to amend the '160 mark to "reflect an updated spelling of its trademark from SYNAPTYK to SYNAPTEK." (*Id.* ¶ 41; Bali Decl. Ex. 15.)  The PTO denied Synaptek's request that same day in light of the ongoing cancellation proceeding for the '160 mark that Synaptek previously had filed. (Dkt. 59-3 ¶ 42; Bali Decl. Ex. 16.)  Synaptek thereafter filed a Petitioner's Motion to Dismiss as Moot the cancellation proceeding for the '160 mark as it had acquired the Synaptyk marks, (Dkt. 59-3 ¶ 98; Schewe Decl. Ex. 40), and filed a response to the PTO's denial of Synaptek's request to amend the '160 mark, (Dkt. 59-3 ¶

99; Schewe Decl. Ex. 41).

On October 27, 2015, the PTO issued another final office action on the '536 application, rejecting registration of the designation "Synaptek" due to a likelihood of confusion with "Synoptek." (Dkt. 59-3 ¶ 43; Bali Decl. Ex. 17.) The PTO specifically held that the "marks are essentially phonetic equivalents and thus sound similar," and while the marks have a different vowel, "the vowels 'A' and 'O' often sound alike and can create words that are phonetically equivalent." (Bali Decl. Ex. 17.) The PTO also held that the two companies' services were "identical in part, and otherwise closely related." (*Id.*) On November 12, 2015, the PTO denied Synaptek's July 15, 2015, request for a Section 7 Amendment of the '160 mark because the proposed amendment "would materially alter the character of the mark." (Dkt. 59-3 ¶ 44; Bali Decl. Ex. 18.)

On April 20, 2016, Synaptek filed another petition with the PTO Director to accept the Section 7 Amendment of the '160 mark to change "Synaptyk" to "Synaptek." (Dkt. 59-3 ¶ 47; Bali Decl. Ex. 20.) Synaptek indicated it had two pending applications for marks, including the '536 application, and attached the PTO's decisions from February 33 and September 4, 2014, on the '536 application. (Bali Decl. Ex. 20.) Synaptek did not attach or mention the PTO's October 27, 2015, final office action rejecting the designation "Synaptek" based on the likelihood of confusion with "Synoptek." (*Id.*) On April 27, 2016, Synaptek filed a request for reconsideration of the PTO's October 27 final office action. (Dkt. 59-3 ¶ 45; Schewe Decl. Ex. 47.)

On June 10, 2016, the PTO again denied the '536 application based on the likelihood of confusion between "Synaptek" and "Synoptek," and because the parties' services were "identical in part, but otherwise closely related." (Dkt. 59-3 ¶ 45; Bali Decl. Ex. 19.) Synaptek did not inform the PTO, in relation to its Section 7 Amendment Petition, of this PTO Office Action. (Dkt. 59-3 ¶ 50.) On September 27, 2016, the PTO,

through a paralegal trademark specialist rather than the Director, reversed its earlier denial and granted Synaptek's Section 7 Amendment of the '160 mark.  (*Id*. ¶¶ 52–53; Bali Decl. Exs. 21, 36, 49.)  An updated certificate for the '160 mark, now "Synaptek," was issued on November 1, 2016.  (Dkt. 59-3 ¶ 110; Schewe Decl. Ex. 52.)

Prior to the PTO's grant of Synaptek's Section 7 Amendment, Synoptek had filed U.S. Trademark Application No. 86/923,471 ("the '471 application") to register the designation "Synoptek Edge" with the PTO on February 29, 2016.  (Dkt. 59-3 ¶ 54.)  On June 21, 2016, the PTO sent Synoptek an Office Action regarding the '471 application.  (*Id*. ¶ 57; Bali Decl. Ex. 44.)  The Office Action indicated that the '471 application may be refused because of the likelihood of confusion with the mark "Synaptek" and because Synoptek had not provided acceptable specimens of use.  (Bali Decl. Ex. 44.)  Synoptek did not have actual knowledge of Synaptek's use of the "Synaptek" mark until it received the PTO's Office Action.  (Dkt. 107 [Declaration of Seven M. Hanle] ¶ 13, Ex. B.)[2]  On January 25, 2017, the PTO issued a suspension notice stating that in light of the '536 application, the '471 application was suspended until the PTO either registered or abandoned the "Synaptek" mark and because Synoptek had not submitted an acceptable specimen of record.  (Dkt. 59-3 ¶ 55; Bali Decl. 23.)  The '471 application has not been granted.  (Dkt. 59-3 ¶ 56.)

On October 4, 2016, Synoptek filed a Petition for Cancellation of the '160 mark with the PTO, (*id*. ¶ 109; Schewe Decl. Ex. 53), as well as this action against Synaptek for cancellation of the '160 mark, amongst other causes of action, (Compl.).  On January 31, 2018, Synoptek filed a motion for partial summary judgment for cancellation of Synaptek's '160 trademark.  (Dkt. 52.)  On March 5, 2018, the Court granted Synoptek's motion for partial summary judgment for cancellation of Synaptek's '160 trademark.

---

[2]  The unredacted version of this document appears at Docket No. 104-2.

(March 5 Order.)  The Court specifically found that there is a likelihood of confusion between the parties' marks, "Synoptek" and "Synaptek," as a matter of law.  (*Id*. at 10–21.)  Thereafter the parties filed the instant motions for summary judgment and partial summary judgment.[3]

## III.  LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 325.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law.  *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 249.

*//*

---

[3] Synaptek argues that there is no good cause to amend the scheduling order to permit consideration of Synoptek's late motion for partial summary judgment and to strike Synaptek's jury demand. (Dkt. 110 at 1–3.)  But the parties stipulated to permit late-filed motions and agreed to a briefing schedule.  (Dkt. 83.)  Indeed, the parties' stipulation stated that Synoptek sought to file "a motion to strike Defendant's jury demand and addressing related issues," and stated that good cause exists "because a ruling on the motions would promote efficiency and judicial economy in preparing for trial and conducting a trial."  (*Id*. at 2.)  Synaptek cannot now complain about Synoptek filing a motion which it stipulated could be heard by the Court.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). Conclusory and speculative testimony in affidavits and moving papers is insufficient to

raise triable issues of fact and defeat summary judgment.  *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(c).  "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

## IV.  DISCUSSION

As an initial matter, Synoptek states that it will not pursue its causes of action for false designation of origin under 15 U.S.C. § 1125 and for violation of the unfair competition and unfair business practices under California Business & Professions Code §§ 17200, *et. seq.* ("UCL").  (Pl.'s Mot. at 5, 9.)  Synaptek does not oppose this request.  (Dkt. 110 at 1.)  Accordingly, the Court DISMISSES Synoptek's causes of action for false designation of origin and for violation of the UCL.  Synoptek's only remaining cause of action is for trademark infringement of the "Synoptek" mark.

### A.   Synoptek's Motion for Partial Summary Judgment on Liability for Trademark Infringement

Synoptek argues that the Court's ruling that there is a likelihood of confusion between the parties' marks as a matter of law conclusively establishes Synaptek's liability for trademark infringement.  (Pl.'s Mot. at 2–5.)  To plead a claim for federal trademark infringement under 15 U.S.C. § 1114(1), Synoptek "must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark."  *Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007).  It is undisputed that Synoptek is the owner of a valid, protectable mark, "Synoptek," and that Synaptek uses the "Synaptek" mark in commerce.

Synaptek argues that a different legal standard regarding likelihood of confusion applies for purposes of infringement than the standard applied for cancellation in the Court's March 5 Order.[4] (Dkt. 110 at 4–7.)  But courts apply the same standard to determine likelihood of confusion for purposes of registration and for purposes of infringement.  *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1307 (2015) (holding that the same standard applies for both purposes because (1) "the operative language is essentially the same" in the applicable statutes, (2) the "likelihood-of-confusion language that Congress used in these Lanham Act provisions has been central to trademark registration since at least 1881", and (3) "[t]here is no reason to think that the same district judge in the same case should apply two separate standards of likelihood of confusion" when considering cancellation of registrations during infringement litigation).  Because the Court ruled that there is a likelihood of confusion between the parties' marks as a matter of law for purposes of cancellation, this ruling also established a likelihood of confusion for purposes of Synoptek's trademark infringement claim.

Synaptek argues that additional facts should be considered to determine likelihood of confusion for Synoptek's trademark infringement claim than were considered in the Court's March 5 Order.  (Dkt. 110 at 5–7.)  Synaptek argues that the Court did not consider that Synaptek has been conducting business in the Washington D.C. metropolitan area since 2008, has operated almost exclusively as a federal small business contractor, and that it directly markets itself to federal agencies and prime contractors.  However, the Court considered Synaptek's limited market in its likelihood of confusion analysis, and found that it favored Synaptek on the factor of Synoptek's likelihood of expansion.  (*See* March 5 Order at 3 [Synaptek provides IT services to the federal

---

[4] Synaptek also argues that the Court's March 5 Order does not have a preclusive effect because that Order was an interlocutory order that is not a "valid and final judgment" for purposes of issue preclusion.  (Dkt. 110 at 4.)  As this case concerns this Court's prior rulings in the same action, the doctrine of issue preclusion does not apply, as it concerns cases where a decision may preclude relitigation of an issue in a *different* suit involving a party to the first case.

government and bids on federal government small-business set-aside contracts], 21 ["Synoptek has provided no evidence of real, present plans to compete with Synaptek for small business set-asides through the federal government"].)  While Synaptek also argues that the Court did not consider that it did not know about Synoptek until 2014, the Court stated in its March 5 Order that "Synaptek has presented evidence that it was unaware of the Synoptek mark when it selected its company name in 2008," and found that Synaptek had constructive notice of the "Synoptek" mark only after the PTO's initial denial of the '536 application in 2014.  (*Id*. at 21.)  Synaptek also argues that the Court did not consider that it has achieved significant recognition in its market, but does not indicate how this fact is relevant to the likelihood of confusion analysis, nor is its relevance apparent.  And Synaptek makes no argument as to how any of these facts necessitate a different conclusion regarding likelihood of confusion for purposes of Synoptek's trademark infringement claim.[5]

## B.    Synaptek's Motion for Summary Judgment on Laches

Synaptek argues that Synoptek's trademark infringement claim is barred by the doctrine of laches, and requests the Court grant summary judgment in its favor.[6]  (Def.'s Mot. at 1–9; Dkt. 110 at 7–8.)  Synoptek argues that there is no evidence of delay in bringing this lawsuit, and Synaptek did not suffer prejudice based on any purported delay.  (Dkt. 116 at 4–8.)[7]

_____

[5]  Synaptek also argues that the Court must consider marketplace usage for purposes of trademark infringement, and did not do so for cancellation.  (Dkt. 110 at 6–7.)  However, the Court specifically held in is March 5 Order that the parties' marks "are virtually identical in appearance" and "are also essentially phonetic equivalents."  (March 5 Order at 13.)  And the "Synoptek" and "Synaptek" marks were registered as word marks without design elements, (Compl. Exs. A, B, J), which undermines Synaptek's argument that the appearance of the marks in the marketplace should be determinative.

[6]  Synaptek also argues that Synoptek's trademark infringement claim is barred by other affirmative defenses it asserted in its Answer.  (Dkt. 110 at 7–8.)  Synaptek's assertion of these defenses does not meet its burden to set forth, by affidavit, or as otherwise provided under Federal Rule of Civil Procedure 56, "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

[7]  The unredacted version appears at Docket No. 104-1.

The affirmative defense of laches is an equitable time limitation that bars a trademark where "the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) (citation omitted).  Courts make laches determinations "with reference to the limitations period for the analogous action at law." *Jarrow Formulas Inc. v. Nutrition Now Inc.*, 304 F.3d 829, 835–36 (9th Cir. 2002).  "If the plaintiff filed within that period, there is a strong presumption against laches.  If the plaintiff filed outside that period, the presumption is reversed." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006).  To establish that laches bars a claim, a defendant must "prove both an unreasonable delay by the plaintiff and prejudice to itself." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226 (9th Cir. 2012) (quotation omitted).

### i.    The Laches Presumption

The parties agree that the most analogous limitation period is California's four-year statute of limitations for trademark infringement, Cal. Code Civ. P. §§ 337, 343, though they dispute the correct starting date for the laches period.  Synaptek argues that the limitations period began to run in 2008, the year that Synoptek federally registered the "Synoptek" mark and the year that Synaptek began doing business.  (Def.'s Mot. at 1.)  Synaptek argues that Synoptek should have known about Synaptek's alleged infringement from 2008 onwards, which is more than four years before October 4, 2016, when Synoptek filed this action.  Synaptek argues that the limitations period began to run in June 21, 2016, when it received the PTO's Office Action denying registration of "Synoptek Edge," as it did not have actual knowledge of Synaptek's alleged infringement prior to that date.  (Dkt. 116 at 4.)

//

"[T]he limitations period runs from the time the plaintiff knew or should have known about his § 43(a) cause of action," *Jarrow*, 304 F.3d at 838, or in other words, from the time when the plaintiff "knew or should have known about the likelihood of confusion between its mark and [the defendant's] mark," *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009).[8]  The limitations period stops "when the lawsuit in which the defendant seeks to invoke the laches defense is initiated."  *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018) (internal quotation and citation omitted).

Based on both parties' "use [of] advertising, press releases, word-of-mouth, and print advertising," (Dkt. 106 ¶ 1), and Synaptek's presence in the market since 2008, (*id.* ¶¶ 10–11), Synaptek argues that Synoptek had constructive notice of Synaptek's alleged infringement prior to 2016, (Def.'s Mot. at 2–4).  However, the case law Synaptek cites does not support the proposition that Synaptek's advertising and presence in the market were sufficient to put Synoptek on constructive notice of Synaptek's alleged infringement.  In the cited cases, the courts considered the plaintiff's failure to diligently police its trademark rights *after* it had actual notice of the defendant's alleged infringement.  *See Grupo Gigante*, 391 F.3d at 1102 (plaintiff waited four years to bring suit after learning of the defendant's alleged infringement, and failed to "conduct an effective policing effort" before bringing the suit); *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991) (plaintiff waited three years to bring suit after learning

---

[8]  Synaptek argues that there are "a multitude of businesses with names with similar spelling, sounds, and appearances which could just as easily as 'Synaptek' create a likelihood of confusion with Synoptek."  (Def.'s Mot. at 2; Dkt. 106 ¶ 3; Dkt. 80 [Declaration of James A. Lowe, hereinafter "Lowe Decl."] ¶ 31, Ex. 158.)  While Synaptek reasons that Synaptek's failure to police these *other* alleged infringers supports the application of laches to this case, "[n]umerous cases have rejected this defense, holding that the existence of infringers other than the defendant was irrelevant to a determination of whether the defendant should be enjoined from continuing in its infringement of plaintiffs' trademarks" for purposes of laches and acquiescence.  *U. S. Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F. Supp. 61, 73 (N.D. Cal. 1972), *aff'd*, 513 F.2d 1226 (9th Cir. 1975) (collecting cases).  Contrary to Synaptek's assertion, the existence of other allegedly infringing parties has no relevance to the issue of plaintiff's actual or constructive knowledge of the defendant's alleged infringement.

of the defendant's alleged infringement); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1110–11 (N.D. Cal. 2008) (the evidence showed that the plaintiff had actual knowledge of the defendant's alleged infringement almost eighteen years before it commenced legal action, and the court discounted the plaintiff's argument that it was not required to police very potential infringer because the plaintiff had resources available to police its trademark, and the defendant's use of the mark had "not been secretive, negligible, or sporadic").  Synaptek does not dispute that Synoptek did not have actual notice of its mark until June 2016.[9]

Synaptek also argues that Synoptek's failure to discover Synaptek's alleged infringement should equate to Synoptek having constructive notice of that use before 2016.  (Dkt. 117 at 3–6, citing McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed.) ["The law imposes on trademark owners the duty to be pro-active and to police the relevant market for infringers."].)  However, "a trademark owner is 'not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon spotting a possible infringer.'"  *adidas Am., Inc. v. Kmart Corp.*, No. CV-05-120-ST, 2006 WL 2044857, at *8 (D. Or. June 15, 2006) (quoting *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 127 (S.D.N.Y. 1989)).  That Synaptek advertised and provided services before 2016 does not meet Synaptek's burden to show Synoptek had constructive knowledge of its alleged

---

[9]  Nor does Synaptek present evidence that the parties advertise on the same, discrete advertising platform which would support the conclusion that Synoptek had constructive knowledge of Synaptek's existence.  *Cf. E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983) (plaintiff had constructive notice of the defendant's trademark for six years before filing suit because the mark was federally registered and the "plaintiff and defendant advertised in the same magazines and exhibited at the same trade fairs, [so] plaintiff had ample opportunity to discover defendant's activities *before* defendant developed a substantial business.") (emphasis added).  Synaptek's citation to *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1187–89 (N.D. Cal. 2015) is also inapposite.  While the district court noted that the plaintiff could have been aware of the defendant's sales over the Internet, this fact was not dispositive.  *Id*.  Rather, the court noted that "individual within and outside the [plaintiff's] organization contacted [plaintiff] to point out [the defendant's] entry in the market."  *Id*. at 1186.  So while the defendant's Internet sales were considered, there was direct evidence that the plaintiff had actual knowledge of the defendant's alleged infringement, and waited four and a half years to bring suit.

infringement.  *Cf. id*. at \*7–8 (denying summary judgment on laches based on the plaintiff's evidence that it only became aware of the defendant's knock-off shoes when mass-market stores began to sell them, and defendant's evidence that it had sold over ten million shoes over thirty years).

Synaptek has not created a genuine dispute whether Synoptek had constructive knowledge of Synaptek's alleged infringement prior to June 21, 2016.  Synoptek did not have actual knowledge of Synaptek's use of the "Synaptek" mark until June 21, 2016, and filed this lawsuit four months later.  Because Synoptek filed within the four year limitations period, "there is a strong presumption against laches."  *Tillamook Country Smoker, Inc.*, 465 F.3d at 1108.

        *ii.*    *Unreasonable Delay*

To determine whether a delay is reasonable, the Court must "look to the cause of the delay."  *Evergreen*, 697 F.3d at 1227.  The Ninth Circuit articulated six factors for determining whether a delay is reasonable in *E–Systems Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983): (1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay.  Here, the *E–Systems* factors clearly weigh in favor of finding Synoptek's four month delay in filing this action was reasonable.

The Court has already found that Synoptek's trademark is strong, and that the parties are competitors.  (March 5 Order at 16, 18.)  Synaptek continued to use the "Synaptek" mark after February 23, 2014, despite knowing that the "Synoptek" mark was federally registered and that the PTO believed there was a likelihood of confusion with its

mark.  Synaptek asserts that it reasonably believed there was no likelihood of confusion between the marks.  (*See, e.g.*, Def.'s Mot. at 5, 9.)  But this was not a reasonable belief in light of the PTO's repeated rulings that a likelihood of confusion existed.[10]  Synoptek diligently enforced its mark, filing suit a few months after receiving notice of Synaptek's alleged infringement, and will be deprived of the federal protections of its registered mark if relief is denied in this action.[11]  Moreover, were the Court to deny relief for Synaptek's infringement, the Court's March 5 Order and cancellation of the "Synaptek" mark's registration would be undermined.  And the extent of harm suffered by Synaptek as a result of Synoptek's four-month delay is minimal, particularly given Synaptek's continued use of its mark despite the PTO's repeated ruling that there was a likelihood of confusion with the "Synoptek" mark.

Synaptek argues that this case is analogous to *E-Systems*, where the Ninth Circuit determined that the factors favored the junior user.  *E-Systems, Inc.*, 720 F.2d at 607.  There, the junior user had a strong mark, rapid growth, and used its name "in good faith ignorance" of the senior user.  *Id*.  And the junior and senior users "advertised in the same magazines and exhibited at the same trade fairs, [thus the senior user] had ample opportunity to discover [junior user's] activities before [the junior user] developed a substantial business."  *Id*.  Under those circumstances, the Ninth Circuit held that "[i]t would be inequitable to force [the junior user] to abandon the name completely in light of the extended period over which [the senior user] could have discovered [the junior user's] use of its name on its products."  *Id*.  By contrast, Synaptek did not continue to use its

---

[10]  Even after this Court ruled that there was a likelihood of confusion between the marks, Synaptek has continued to use the "Synaptek" mark and goes so far as to argue that no likelihood of confusion has been established in its briefing on the motions before the Court.

[11]  Synaptek argues that Synoptek has not demonstrated any harm to its business as a result of confusion amongst consumers, or loss of business in the past or in the future.  (Dkt. 117 at 7–8.) This argument belies the undisputed fact that the PTO has denied Synaptek's application to register "Synoptek Edge" in part because of the likelihood of confusion with the "Synaptek" mark.  In any event, the Court has already established there is a likelihood of confusion between the marks, which supports a finding of potential harm to Synoptek.

name in good faith ignorance of Synoptek, nor has Synaptek demonstrated that Synoptek had "ample opportunity" to discover Synaptek's activities.  Thus, the equities do not favor Synaptek here.

### iii.    Prejudice to Synaptek

"Even where a defendant establishes that a plaintiff delayed unreasonably in filing suit, laches will not bar a claim unless that delay prejudiced the defendant." *Eat Right Foods Ltd.*, 880 F.3d at 1119 (citing *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004)).  "If only a short period of time has elapsed since the accrual of the claim, the magnitude of the prejudice required before the suit should be barred is great."  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 1000 (9th Cir. 2006) (citation omitted).  "A defendant can establish prejudice by demonstrating that during the plaintiff's delay, 'it invested money to expand its business or entered into business transactions based on [its] presumed rights' in a disputed mark."  *Eat Right Foods Ltd.*, 880 F.3d at 1119 (quoting *Miller*, 454 F.3d at 999).  Given Synoptek's short delay between discovering Synaptek's alleged infringement and the filing of this action, Synaptek is required to demonstrate "great" prejudice for laches to apply.  Synaptek has made no such showing.

Synaptek argues that it has advertised and promoted its business under the "Synaptek" mark, and the goodwill it has developed under its name will be lost.[12]  (Def.'s Mot. at 7–10.)  Synaptek provides the declaration of its President, David Gauldfeldt, in support–but Mr. Gauldfeldt's declaration makes conclusory statements as to the

---

[12]  Synaptek also argues that it would be prejudiced in light of the substantial amount of money it spent to acquire the "SYNAPTYK" mark.  Synaptek ignores that it acquired this mark after the PTO found that there was a likelihood of confusion with the "Synoptek" mark, raising the inference that Synaptek made this investment in bad faith, knowing of its potential infringement of the "Synoptek" mark but nonetheless continuing to pursue a strategy to register its own mark.

substantial time and money spent on building his companies identity around the "Synaptek" mark.  (Dkt. 79 [Declaration of David Gauldfeldt, hereinafter "Gauldfeldt Decl."] ¶¶ 21, 24–32.)  Synaptek's evidence, cited by Synoptek, shows that it spent around $50,000 on advertising expenditures between 2008 and 2015.  (Dkt. 116 at 5–6.)  This amount simply does not compare to the amount spent on advertising and developing business that courts have found significant enough to find substantial prejudice had resulted because of the senior user's delay.  *See, e.g., Saul Zaentz Co.*, 627 F. Supp. 2d at 1118 (finding substantial prejudice to the junior user who had been in business since 1976, and had "spent tens of millions of dollars on advertising in an effort to build up name recognition and goodwill"); *Jarrow*, 304 F.3d at 840 (prejudice existed where a "long-term investment" of "hundreds of thousands" of dollars per year was made in marketing nutrition product to the public); *Fitbug Ltd.*, 78 F. Supp. 3d at 1194 (finding severe economic prejudice based on the junior user's "substantial evidence detailing its efforts through the [four and a half year] period of [the senior user's] delay to build its business, generating substantial sales, hiring large numbers of employees, and developing products, all of which it offers under the well-known Fitbit mark" and "garnered awards and substantial media coverage").

Simply stated, Synaptek has not demonstrated the substantial prejudice as a result of Synoptek's four month delay.  *Miller*, 454 F.3d at 1000.[13]

## C.   Synaptek's Motion for Summary Judgment on Damages

Synaptek also argues that Synoptek has not established its trademark infringement claim because there is no evidence that it suffered any damages.  (Def.'s Mot. at 10–20.)  Specifically, Synaptek argues that Synoptek has failed to show intentional or willful

---

[13]  It is unnecessary to address Synoptek's argument that progressive encroachment negates the application of laches, (Dkt. 116 at 7), because the Court has determined that laches does not apply.

infringement, and that there is no justification to award disgorgement of Synaptek's profits based on a compensatory, unjust enrichment, or deterrence rationale.[14]   Synoptek argues that Synaptek has intentionally infringed on the "Synoptek" mark, and disgorgement of Synaptek's profits is justified by deterrence.  (Dkt. 116 at 9–14.)

### i.   Intentional or Willful Infringement

Synoptek "must show intentional or willful infringement before disgorgement of [Synaptek's] profits could be awarded."  *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 442 (9th Cir. 2017), *cert. denied*, No. 17-731, 2018 WL 2186227 (May 14, 2018).  "Willful infringement carries a connotation of deliberate intent to deceive.  Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."  *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405–06 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (denying an accounting of profits because the defendant's "infringement was innocent and accomplished without intent to capitalize on [the plaintiff's] trade name").  "*Lindy Pen* requires at least a showing of trading on the mark holder's established name as part of the willfulness required to justify disgorgement."  *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 847 (C.D. Cal. 2012); *see Lindy Pen,* 982 F.2d at 1405 ("Where trademark infringement is deliberate and willful, this court has found that a remedy no greater than an injunction 'slight' [to] the public . . . only in those cases where the infringement is 'willfully calculated to exploit the advantage of an established mark.'").

*//*

---

[14]  It is unnecessary to consider Synaptek's arguments about the lack of evidence of statutory damages, actual damages, or the need for corrective advertising as Synoptek is only seeking an accounting of Synaptek's profits and disgorgement thereof.  (See Dkt. 116 at 14.)

Synoptek argues that Synaptek had actual knowledge of the "Synoptek" mark as of February 4, 2014, when the PTO denied Synaptek's registration for the "Synaptek" mark based on likelihood of confusion.[15]  (Dkt. 116 at 9–12.)  Synaptek nevertheless continued to use the "Synaptek" mark and to pursue federal registration of that mark despite multiple PTO denials on the same grounds.  Synaptek's blatant use of the "Synaptek" mark in spite of the PTO denials provides strong evidence of willful infringement.  *See, e.g., W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2nd Cir. 1970) (the defendant's sales of the infringing product "in the teeth of the patent office's refusal to register" the corresponding mark twice was willful infringement); *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir. 1980) (the defendant's continued use of its mark after the patent office refused to register it in light of a senior user's mark "clearly and explicitly supports the finding of willful infringement").

Synaptek argues that it continued to use its mark while contesting the PTO's denials "under the reasonable belief that its name did not cause a likelihood of confusion," thus its infringement was not intentional or willful.  (Def.'s Mot. at 20.)  Synaptek argues that its belief was reasonable because the PTO agreed that another mark cited in its original denial, the "Synetek Solutions" mark, did not bar registration of "Synaptek" in a later order.  (Mot. at 20; Dkt. 106 ¶ 73.)  But the lack of a likelihood of confusion between "Synaptek" and "Synetek Solutions" has little to no bearing on the likelihood of confusion between "Synaptek" and "Synoptek."  Synaptek also argues its belief was reasonable because of "the difference in the apparent business" of the parties and "the fact [Synaptek] had no contact with [Synoptek] in all the previous years of [its]

---

[15]  Synoptek also argues that Synaptek has had constructive knowledge of its "Synoptek" mark when Synaptek adopted the "Synaptek" mark because the former was federally registered.  (Dkt. 116 at 9.) Although federal registration of a trademark "puts would-be users on constructive notice" of a trademark, *Stone Creek, Inc.*, 875 F.3d at 439, Synoptek does not provide any evidence that Synaptek intended to trade on the "Synoptek" mark when it adopted its name.  (Def.'s Mot. at 19.)  Indeed, the parties do not dispute that Synaptek was unaware of the "Synoptek" mark at that time, thus there is no evidence to support intentional or willful infringement beginning in 2008.

business." (Gauldfeldt Decl. ¶ 12.)  However, the PTO's likelihood of confusion analysis would involve a comparison of the parties' business and the overlap in the parties' marketing channels, so the PTO's decision directly contradicted this belief.[16]

The PTO denied the registration of "Synaptek" based, at least in part, on the likelihood of confusion with "Synoptek" on *four occasions*.  And even after this Court came to the same conclusion, and ordered cancellation of the "Synaptek" mark because of the likelihood of confusion, Synaptek *still* continues to use "Synaptek."  It was unreasonable for Synaptek to maintain its belief in the face of five authoritative rulings against the registration of its mark.  *Cf. Evergreen*, 697 F.3d at 1228 (the defendant's continued use of a copyrighted work was done with the reasonable, good faith, belief it was fair use in light of a copyright doctrine exempting certain depictions from protection; the only notice the defendant had received of its infringement were demand letters from the plaintiff).  Synaptek's continued use of "Synaptek" demonstrates an indifference to Synoptek's trademark rights and a willingness to determine unilaterally, in spite of the PTO's denials, that Synoptek's rights in its marks should be ignored.

### ii.    Basis for Damages

Section 1117(a) expressly provides for an award of defendant's profits, subject to the principles of equity, where the plaintiff proves that the defendant's infringement was willful.  *See Lindy Pen*, 982 F.2d at 1405 ("The Supreme Court has indicated that an accounting of profits follows as a matter of course after infringement is found by a

---

[16]  Synaptek also argues that it had no intention of trading on Synoptek's mark, (Def.'s Mot. at 20), and that there is no evidence indicating that it had such an intent, (Dkt. 117 at 13).  Synaptek adds that there is no evidence in the record that it sought to capitalize on Synoptek's goodwill, or that the government agencies and contractors from whom Synaptek obtains contracts have any reason to know about Synoptek.  (*Id.*)  The lack of this evidence does not negate Synaptek's efforts to register "Synaptek" in spite of Synoptek's registered senior mark, the similarity of the companies' services, and the PTO's repeated denial of registration of the "Synaptek" mark.

competitor.  Nonetheless, an accounting of profits is not automatic and must be granted in light of equitable considerations." (citations omitted)); *Lindy Pen,* 982 F.2d at 1405.  The Ninth Circuit has recognized three justifications for awarding an infringer's profits: (1) compensating the plaintiff for diverted sales; (2) preventing unjust enrichment; and (3) serving as a deterrent to infringers.  *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 123 (9th Cir. 1968).  The Ninth Circuit also has suggested that where infringement is deliberate and willful, a remedy no greater than an injunction is insufficient.  *See Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir. 1982) ("[A]n award of little more than nominal damages would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication.  Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy."); *see also Lindy Pen*, 982 F.2d at 1405.

The Ninth Circuit explained in *Maier* that making acts of deliberate trademark infringement unprofitable—through the award of profits—accomplishes the purposes of the Lanham Act.  *Maier Brewing*, 390 F.2d at 123 ("It seems scarcely equitable * * * for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss.  To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement.") (citation omitted).

Synoptek argues that the Court should grant an accounting of Synaptek's profits as a deterrent in light of Synaptek's intentional and willful infringement.[17]  (Dkt. 116 at 12–

---

[17]  The Court notes that Synoptek did not include an accounting in its prayer for relief.  (*See* Compl.)  However, the Ninth Circuit has held that "when a party raises a claim in materials filed in opposition to a motion for summary judgment, the district court should treat the filing as a request to amend the pleadings and should consider whether the evidence presented creates a triable issue of material fact."

14.)  An award of an accounting of Synaptek's profits from February 23, 2014, until the present is justified in this case.  Synaptek deliberately used the "Synaptek" mark, and continued to pursue registration thereof, in the face of the PTO's and the Court's repeated finding of a likelihood of confusion with the "Synoptek" mark.  Synaptek willfully infringed on that mark.  Under the circumstances of this case, a judgment limited to an injunction is clearly inadequate.  Here, an accounting is appropriate to deter Synaptek's future infringement of the "Synoptek" mark, and would not constitute an impermissible penalty under the Lanham Act.[18]  *See* 15 U.S.C. § 1117(a).

Synaptek argues that there is no evidence of actual confusion between the parties and no evidence of diverted sales to support disgorgement.[19]  (Def.'s Mot. at 15–19.) Proof of actual injury is not required to recover profits.  *Gracie v. Gracie,* 217 F.3d 1060, 1068 (9th Cir. 2000) ("The Lanham Act . . ., 15 U.S.C. § 1114, does not require actual consumer confusion for recovery of profits.  Rather, by its terms § 1114 requires only a *likelihood* of confusion combined with *willful infringement*.").  And the Ninth Circuit held that even

> [i]n those cases where there is infringement, but no direct competition, [disgorgement] can be accomplished by the use of an accounting of profits based on unjust enrichment rationale.  Such an approach to the granting of accountings of profits would, by removing the motive for infringements, have the effect of deterring future infringements.  The courts would

*United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1524 (9th Cir.1995).  The Court is inclined to follow *Hughes Aircraft*, and Synaptek has confronted the requested relief head-on.

[18]  Synaptek argues that there is "no need for deterrence" because it chose its name without knowledge of or the intention to trade on the "Synoptek" mark, and it intends to change its name to avoid any future confusion.  (Def.'s Mot. at 17–18.)  Synaptek ignores an injunction provides no remedy for its past willful infringement, nor deters its continued infringing use.

[19]  Synaptek also argues that Synoptek is not "entitled to a windfall," *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 918 (Fed. Cir. 1984), and disgorgement of its profits would constitute a windfall because there is no evidence that Synoptek lost any business or suffered any harm as a result of Synaptek's infringement.  (Def.'s Mot. at 18–19.)  The lack of proof of past harm does not negate the deterrence rationale behind the Court's awarding an accounting here, as the relief seeks to compensate the senior user to deter future infringements.

therefore be able to protect the intangible value associated with trade-marks and at the same time be protecting the buying public from some of the more unscrupulous members of our economic community.

*Maier Brewing*, 390 F.2d at 123.  In any event, the Court has not yet decided what disgorgement of profits Synoptek is entitled to at this point.

Accordingly, the Court DENIES Synaptek's motion for summary judgement based on Synoptek's failure to prove damages, and GRANTS Synoptek's motion for partial summary judgment as to liability for trademark infringement.[20]  Because the Court has found that Synaptek infringed on Synoptek's "Synoptek" mark, the Court also GRANTS summary judgment against Synaptek on its counterclaim for non-infringement.

### D.    Synoptek's Motion to Strike Synaptek's Jury Demand

Synoptek also requests that the Court strike Synaptek's jury demand.  (Pl.'s Mot. at 6–7.)  At this stage, Synoptek seeks only equitable remedies–an accounting for disgorgement of profits and injunctive relief–in addition to attorneys' fees and costs.  *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal."); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (affirming the district court's ruling to resolve the plaintiff's trademark claims in a bench trial because the plaintiff only sought an injunction, an equitable remedy).  Neither party has a right to a trial by jury on claims for equitable relief.[21]  *See United States v. Louisiana,* 339 U.S.

---

[20]  In order for the Court to grant Synoptek's motion for partial summary judgment on liability for trademark infringement, the Court necessarily must rule in favor of Synoptek on Synaptek's laches defense.  At the hearing on the parties' motions, the parties represented that the record is complete on the issue of laches.

[21]  Synaptek argues it is entitled to a jury trial as was the plaintiff in *Versace v. Awada*, No. CV 03-3254-GAF, 2009 WL 10673371, at *6 (C.D. Cal. Sept. 4, 2009).  But in that case, the district court held that a jury must determine the amount of statutory damages owed to plaintiff for defendant's copyright infringement, a type of relief not at issue in this action.

699, 706 (1950); *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 308 (9th Cir. 1979) (affirming the district court's decision to vacate the earlier grant of a jury trial to the plaintiff after no legal issues remained, and the parties only sought equitable relief). And while factual disputes remain regarding the disgorgement of Synaptek's profits, Synaptek is not entitled to have those issues decided by a jury.  *See Fifty-Six Hope Rd. Music, Ltd.*, 778 F.3d at 1076 ("[T]he determination of profits under § 1117 is not 'fundamental, . . . inherent in and of the essence of the system of trial by jury.'") (citation omitted).  Thus, the Court GRANTS Synoptek's motion to strike Synaptek's jury demand.[22]

**V.  CONCLUSION**

        For the foregoing reasons, Synoptek's motion for partial summary judgment on liability for trademark infringement and to strike Synaptek's jury demand is **GRANTED**. Synaptek's motion for summary judgment is **DENIED**.  The Court finds that Synoptek is entitled to an accounting of Synaptek's net profits from February 23, 2014, until the present.  The Court also **GRANTS** summary judgment against Synaptek on its counterclaim for non-infringement.

        DATED:     June 4, 2018

                                                                CORMAC J. CARNEY

                                                     UNITED STATES DISTRICT JUDGE

---

[22]  Synaptek argues that Synoptek cannot seek to strike either parties' jury demand because Synaptek does not consent to withdrawal of the demand as required by Federal Rule of Civil Procedure 38(d). (Dkt. 110 at 3–4.)  This argument is beside the point, as Synoptek does not seek to withdraw its jury demand.  Rather, as a matter of law, neither party has a right to a jury trial on the remaining issues.