Steven M. Hanle, SBN 168876
  email: shanle@sycr.com
Jason H. Anderson, SBN 172087
  email: janderson@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Attorneys for Plaintiff
SYNOPTEK, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNOPTEK, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> SYNAPTEK CORPORATION, a Virginia corporation, <br><br> Defendant. | CASE NO. 8:16-cv-01838 CJC(JCGx) <br><br> Honorable Cormac J. Carney <br><br> **SYNOPTEK'S STATUS REPORT** <br><br> Status Conference <br> Date: June 12, 2018 <br> Time: 9:00 a.m. <br><br> Complaint Filed: October 7, 2016 <br><br> Trial: June 26, 2018 |

Plaintiff Synoptek respectfully submits this status report to assist the Court in assessing the issues remaining to be determined in this case and whether a trial is necessary.

## I. ISSUES REMAINING TO BE DETERMINED

As a result of the Court's orders of March 5 and June 5, 2018 (Dkt. Nos. 66 and 140), the issues remaining to be determined in this case are as follows:

- The amount of Defendant's net profits that are subject to disgorgement;
- The amount of Defendant's net profits that will be ordered disgorged;
- The terms of an injunction; and
- Synoptek's entitlement to attorneys' fees and the amount.

For the reasons addressed below, Synoptek submits that a trial is unnecessary to resolve these issues, but if the Court deems a trial necessary, Synoptek will be prepared to proceed at the Court's convenience.

## II. THE AMOUNT OF DEFENDANT'S NET PROFITS

Synoptek has proposed to stipulate to the amount of Synaptek's net profits to prevent the further waste of the Court's time and the parties' money on deciding straightforward issues. According to Synaptek's own expert, its net profits from February 23, 2014 through December 31, 2017 were $3,459,491. This number is taken directly from the expert's report, with the appropriate calculation for the partial year 2014. Synoptek contends that this amount is understated by over $1 million, including $263,249 in "leased auto expenses," which were essentially a distribution of profits to Synaptek's three owners in the form of luxury automobile payments, and over $800,000 in discretionary spending on employee morale, employee recognition, etc. See *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F. 3d 1059, 1076 (9th Cir. 2015) (refusing to reduce profits based on defendant's expense of $222,771 that was "not an arms' length transaction"). Thus, if forced to try this issue, Synoptek will seek to prove that Synaptek's net profits were in excess of $4.5 million (plus its profits for 2018 to date).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

SYNOPTEK'S STATUS REPORT

LITIOC/2185508v1/102759-0011                                CASE NO. 8:16-cv-01838

However, to prevent the further waste of the Court's time and the parties' money on attorneys and experts, Synoptek is prepared to stipulate that Synaptek's net profits through 2017 were $3,722,740, which is the total of Synaptek's expert's number and the leased auto expenses. Synoptek is also prepared to stipulate to a reasonable estimate of Synaptek's profits thus far in 2018, subject to receiving appropriate supporting documentation. A trial on the amount of Synaptek's net profits is unnecessary.

### III.   THE AMOUNT OF DEFENDANT'S NET PROFITS TO BE DISGORGED

The Court has the discretion to disgorge <u>all</u> of Defendant's profits on revenue associated with the use of the infringing mark, limited only by "the principles of equity." See 15 U.S.C. § 1117 ("the plaintiff <u>shall be entitled</u> …subject to the principles of equity, to recover (1) defendant's profits …" (emphasis added)). Significantly, the statute does not qualify a plaintiff's rights to be awarded all of the defendant's profits. Indeed, that is the norm. See, *e.g.*, *Maier Brewing Co. v. Fleischmann Distilling Corp*., 390 F.2d 117, 124 (9th Cir. 1968); *Playboy Enters. v. Baccarat Clothing Co*., 692 F.2d 1272, 1277 (9th Cir. 1982) (reversing district court's award of lower amount and awarding all of the infringing defendant's profits on sale of jeans bearing the infringing trademark); *Fifty-Six Hope Rd.*, 778 F. 3d at 1076-77 (affirming disgorgement of district court's determination of defendants' total net profits). In fact, some courts have gone so far as to say that it was an error for a trial court to award less than all of the defendant's profits, even in the absence of direct competition or actual confusion:

> It is essential to deter companies from willfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark…. Revlon's course of conduct over a period of years has

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-
SYNOPTEK'S STATUS REPORT
LITIOC/2185508v1/102759-0011                    CASE NO. 8:16-cv-01838

> demonstrated a <u>callous disregard for the rights of a competitor</u> and for the <u>mandates of the federal courts</u>; consequently it is appropriate that we require it to make a full accounting.

*W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970) (italics in original; underlining added).

Significantly, this Court found that Synaptek has engaged in both of the wrongs noted by the court in *W.E. Bassett*: (1) "Synaptek's continued use of 'Synaptek' demonstrates an indifference to Synoptek's trademark rights and a willingness to determine unilaterally, in spite of the PTO's denials, that Synoptek's rights in its marks should be ignored"; (2) "even after this Court … ordered cancellation of the 'Synaptek' mark because of the likelihood of confusion, Synaptek still continues to use 'Synaptek.'" (Dkt. No. 140 at p. 21.) See *Maier Brewing*, 390 F.2d at 123, quoting *Admiral Corp. v. Price Vacuum Stores, Inc.*, 141 F. Supp. 796, 801 (E.D.Pa.1956) ("It seems scarcely equitable * * * for an infringer to reap the benefits of a trade-mark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages on the theory that the registrant suffered no loss. To impose on the infringer nothing more serious than an injunction when he is caught is a tacit invitation to other infringement.")

Upon determining the amount of net profits, "the burden is upon [defendant] to prove that sales were 'demonstrably not attributable' to the infringing mark." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F. 3d 1007, 1012 (9th Cir. 1994). In *Lindy Pen Co. Inc. v. Bic Pen Corp.*, 982 F. 2d 1400, 1408 (9th Cir. 1993), the court stated:

> The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. *Mishawaka Rubber & Woolen Mfg. Co. v.*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-
SYNOPTEK'S STATUS REPORT
LITIOC/2185508v1/102759-0011   CASE NO. 8:16-cv-01838

1  *S.S. Kresge Co.,* 316 U.S. 203, 206-07 (1942). The defendant thereafter
2  bears the burden of showing which, if any, of its total sales are not
3  attributable to the infringing activity, and, additionally, any permissible
4  deductions for overhead. 15 U.S.C. 1117(a).
5 Here, because <u>all of Defendant's services</u> are sold under the infringing mark, its
6 profits are <u>presumed</u> to be the result of the infringing activity, and the burden has
7 shifted to Defendant to prove that its profits were "demonstrably not attributable"
8 to the use of the infringing mark. (See, *e.g.*, Dkt. No. 79 (Declaration of David
9 Gauldfeldt) at ¶ 17 ("Once we adopted Synaptek as our name in August 2008, we
10 began promoting our services using that corporate name."); ¶ 27 ("As a result of
11 our effort in promoting our company name, Synaptek doubled in size each year
12 from 2009 through 2015.").)
13  Synaptek cannot meet its burden to prove that its profits were <u>demonstrably</u>
14 <u>not attributable</u> to the use of the infringing mark for several reasons.  First, its own
15 expert testified that such proof would require a survey, or at least evidence from
16 customers who make the decisions to purchase Synaptek's services.  (Hanle Decl.
17 Ex. 1 (Trout Deposition) at p. 50.)  But Synaptek has not procured a survey, and
18 cannot present evidence from customers, because it failed to identify any
19 customers as potential witnesses in its initial disclosures, or any supplemental
20 disclosures during discovery in this case.[1]  (Hanle Decl. ¶ 3, Ex. 2.)
21  Second, Mr. Gauldfeldt's declaration goes to great lengths to espouse the

---

[1]  Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  In *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW (DMR), 2011 U.S. Dist. LEXIS 158596, at *8 (N.D. Cal. June 3, 2011), the court precluded Defendants from using four witnesses at trial because the Defendants failed to disclose those witnesses until two weeks before the close of fact discovery. Here, Synaptek identified several customer witnesses on May 2, 2018, which was **41 days after** the close of fact discovery, and less than two months before trial.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-
SYNOPTEK'S STATUS REPORT
LITIOC/2185508v1/102759-0011     CASE NO. 8:16-cv-01838

1  importance of the Synaptek mark to its customers:

> As a result of Synaptek's efforts in the last ten years to develop its brand name, Synaptek developed relationships with countless federal customers, industry alliances, and technology partners. They all work with our company <u>based on the knowledge of the Synaptek brand</u> and what it has demonstrated the ability to do.

(Dkt. No. 79 at ¶ 31 (emphasis added).)  This unambiguous admission essentially precludes any argument by Synaptek now that its profits were not "based on the [customer's] knowledge of the [infringing] Synaptek brand."

Still further, Synaptek's conduct for years, and right up to the present, demonstrates the importance of the infringing mark to Synaptek's business – from refusing to change its name when the PTO repeatedly found a likelihood of confusion, to its machinations in the PTO to secure a registration in spite of these repeated findings, to ignoring the Court's first summary judgement ruling, to proposing a new mark, "TEKSYNAP," that simply reverses the syllables of the infringing mark in a stubborn effort to retain the value of the infringing mark.  In sum, in light of extensive undisputed <u>admissions</u> by its words and its actions, Synaptek cannot meet its burden to prove that its profits are demonstrably not attributable to the use of its infringing mark.

Finally, the record on the equities – which are the only limits on the Court's discretion to award Synaptek's net profits – is fully developed.  Having filed a dispositive motion on the issue of its willfulness, Synaptek cannot now argue that a trial is necessary to explore that issue.  The Court has the discretion to award all of Synaptek's net profits and should award all or a substantial portion of such profits as a deterrent to Defendant's stubborn, persistent and willful infringement.

**IV.   THE TERMS OF AN INJUNCTION**

After years of ignoring Synoptek's trademark rights, Synaptek appears to have finally committed to changing its infringing branding:

> Following Judge Carney's summary judgment Order this past Tuesday June 5, 2018, our client acted to change its brand and mark.
>
> … So it determined to change its brand and develop a new trademark.
>
> … The website change will be accomplished as quickly as possible and <u>all branding will be changed rapidly</u>.

(Hanle Decl. Ex. 3.) In light of this commitment, Synaptek should stipulate to an injunction, which would impose no undue hardship, but which is necessary to prevent a reversion to its willful infringement, and further irreparable harm to Synoptek. See, *e.g.*, *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F. 3d 1239, 1250 (9th Cir. 2013) (evidence of loss of control over business reputation constitutes irreparable harm), citing S*tuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 841 (9th Cir. 2001).

But most significantly for purposes of this status report and the June 12 status conference, the factual record that supports injunctive relief is fully developed, and a trial is not necessary to inform the terms of an injunction. Indeed, courts routinely decide the terms of a permanent injunction based on the post-trial briefing.

## V. ATTORNEYS' FEES

Nor is a trial necessary on the issue of attorneys' fees, which is also routinely decided based on the post-trial briefing. A court may order the losing party in a trademark case to pay the prevailing party's attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Under Ninth Circuit law, the Court's existing ruling that Synaptek's infringement was willful fully supports a finding that this is an exceptional case. Nothing more is required. "A case is considered exceptional 'when the infringement is malicious, fraudulent, deliberate, or <u>willful</u>,'" and the defendant's conduct need not even be egregious or in bad faith. *Fifty-Six Hope Rd.*, 778 F. 3d at 1067, 1078 (emphasis added) (affirming attorney fee award of $1,518,687.94 and disgorgement of $781,427.83 based on willful

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-
SYNOPTEK'S STATUS REPORT
LITIOC/2185508v1/102759-0011                   CASE NO. 8:16-cv-01838

infringement); *Earthquake Sound Corp. v. Bumper Indus.*, 352 F. 3d 1210, 1216 (9th Cir. 2003) ("[A] case is exceptional within the meaning of 15 U.S.C. § 1117(a) where the infringement is <u>willful</u>, deliberate, knowing or malicious." (emphasis added)).

In support of its request to be awarded its attorneys' fees, Synoptek will also establish the "unreasonable manner in which the case was litigated" by Defendant. See *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Namely,

- Defendant filed a meritless motion to dismiss for lack of personal jurisdiction despite Defendant's extensive work in California that was carried out and promoted using the infringing mark.
- Defendant reneged on a non-monetary settlement that would have given it time to transition away from its infringing mark, forcing Synoptek to litigate the foregone conclusion of likelihood of confusion.
- Defendant engaged in discovery abuse, concocting discovery disputes that it never pursued, to increase the expense of litigation.
- Defendant forced Synoptek to rebut the report of a linguistics expert despite extensive law that such evidence is irrelevant to the likelihood of <u>consumer</u> confusion.
- Defendant has continued to use its infringing mark, even after the Court found a likelihood of confusion as a matter of law.
- Defendant refused to narrow the case for trial by arguing the frivolous position that the Court's likelihood of confusion finding does not apply to the claim for trademark infringement.
- Defendant refused to narrow the case for trial by refusing to stipulate to the profit calculations of its own expert witness.
- Defendant failed to produce cost-summaries requested by Synoptek for purposes of calculating Defendant's profits, even though such summaries

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-
SYNOPTEK'S STATUS REPORT
LITIOC/2185508v1/102759-0011              CASE NO. 8:16-cv-01838

had already been provided to its Defendant's expert.  Defendant instead produced its entire general ledgers for the years 2013 through 2017, including over 82,000 lines of data, with each entry including anywhere from 12 to 25 columns, which required excessive analysis by Synoptek's expert that could have been avoided if Defendant produced what was requested by Synoptek and already existed.

Importantly, the evidence of this litigation conduct is not the type of evidence that must be presented at trial, but rather by attorney declarations and citations to the Court's docket.

## VI. CONCLUSION

In sum, a trial is not necessary to decide the issues remaining to be determined in this case.  Indeed, a trial would only add to the attorneys' fees and litigation costs that Synaptek should be ordered to pay as a result of its willful infringement and forcing Synoptek to incur the expense of litigation.  See *Maier Brewing*, 390 F.2d at 123.

DATED:  June 11, 2018

STRADLING YOCCA CARLSON & RAUTH, P.C.

By: */s/ Steven M. Hanle*
　　　Steven M. Hanle
　　　Jason H. Anderson
　　　Attorneys for Plaintiff
　　　SYNOPTEK, LLC